UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DEREK T. WOYTSEK,               )  | | |
|          *Plaintiff*,                     )  | | |
|                                            )  | | |
|     *vs*.                                  )  | 1:12-cv-01816-JMS-MJD | |
|                                            )  | | |
| CAROLYN W. COLVIN,              )  | | |
| *Acting Commissioner of the*    )  | | |
| *Social Security Administration*, )  | | |
|          *Defendant.*                     )  | | |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Derek Woytsek applied for disability, disability insurance benefits, and supplemental security income from the Social Security Administration on December 22, 2009, alleging a disability onset date of April 1, 2009. After a series of administrative proceedings and appeals, including a hearing in October 2011 before Administrative Law Judge ("ALJ") Mark Ziercher, the ALJ issued a finding on January 27, 2012 that Mr. Woytsek was not entitled to disability benefits or supplemental security income. In October 2012, the Appeals Council denied Mr. Woytsek's timely request for review of the ALJ's decision, rendering that decision the final decision of the Defendant, Commissioner of the Social Security Administration ("the Commissioner"), for the purposes of judicial review. Mr. Woytsek then filed this action under 42 U.S.C. § 405(g), asking the Court to review the Commissioner's denial.

### I.
### BACKGROUND

Mr. Woytsek was twenty-six years old at the time of his disability application on December 22, 2009.[1] [Dkt. 11-5 at 2, 6.] He has an eighth-grade education. [Dkt. 11-2 at 44.] Prior to

---

[1] The ALJ noted that Mr. Woytsek filed for benefits on December 14, 2009, [dkt. 11-2 at 13], but the record indicates that he actually applied on December 22, 2009, [dkt. 11-5 at 2, 6].

his application, Mr. Woytsek had been doing volunteer work for the owner of the house he lives in. [*Id.* at 46.] He also worked from January to May 2009 at two pizza restaurants. [Dkt. 11-6 at 62.] Mr. Woytsek's alleged onset date is April 1, 2009, [dkt. 11-5 at 2], and he claims he is disabled for a variety of impairments which will be discussed as necessary below.[2] He was last insured for purposes of disability on September 30, 2011. [*Id.* at 13; dkt. 11-2 at 14.]

Using the five-step sequential evaluation set forth by the SSA, the ALJ issued an opinion on January 27, 2012. [Dkt. 11-2 at 13-26.] The ALJ found as follows:

- At Step One of the analysis, the ALJ found that Mr. Woytsek had not engaged in substantial gainful activity[3] since the alleged onset date of his disability. [*Id.* at 16.]

- At Step Two, the ALJ found that Mr. Woytsek suffered from the severe impairments of attention deficit hyperactivity disorder[4] ("ADHD") and a major depressive disorder, in addition to non-severe hearing loss. [*Id.* at 16-17.]

- At Step Three, the ALJ found that Mr. Woytsek did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. [*Id.* at 18-20.] The ALJ concluded that Mr. Woytsek had the residual functional capacity ("RFC") to perform "work at all exertional levels" except that, among other things, "he can work in noise environments up to and including moderate...[and] can perform productive work tasks that require him to understand, remember, and carry out simple work tasks at the GED Reasoning Level 01…." [*Id.* at 21.] Additionally, the ALJ found that Mr. Woytsek "can stay on task for up to an average of 90% to 95% of an 8 hour work day, not including the typical

---

[2] Mr. Woytsek detailed the pertinent facts in his opening brief, and the Commissioner did not dispute those facts. As the resolution of the issues presented does not require significant factual development, and because the facts implicate sensitive and otherwise confidential information concerning Mr. Woytsek, the Court will simply incorporate those facts by reference herein. Specific facts will be articulated as needed.

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.* involves significant physical or mental activities) and gainful (*i.e.* work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a) and § 416.972(a).

[4] The ALJ noted that while there is no listed impairment of ADHD for adults, "it may be considered under Listing 12.02, organic mental disorders because of the attendant memory impairment." [Dkt. 11-2 at 16.]

> morning; lunch; and afternoon breaks," and "can have inconsequential or minimal contact with the general public." [*Id.*]

- At Step Four, the ALJ found that Mr. Woytsek did not have any past relevant work. [*Id.* at 24.]

- Finally, at Step Five, considering Mr. Woytsek's age, education, work experience, RFC, and the testimony of a vocational expert ("VE"), the ALJ determined that jobs existed in the State of Indiana that Mr. Woytsek could perform, such as dish washer, laundry worker, and hand packager. [*Id.* at 25.]

Based on these findings, the ALJ concluded that Mr. Woytsek was not entitled to receive disability, disability insurance benefits, or supplemental security income. [*Id.* at 26.] On February 7, 2012, Mr. Woytsek requested that the Appeals Council review the ALJ's decision. [Dkt. 11-2 at 6.] On October 23, 2012, the Appeals Council denied Mr. Woytsek's request for review. [*Id.* at 2-4.] Accordingly, the Appeals Council's decision became the final decision of the Commissioner for the purposes of judicial review.

## II.
### STANDARD OF REVIEW

The Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court *must* affirm the denial of benefits. Otherwise, the Court will remand the matter back to the Social Security Administration for further consideration; only in rare cases can the Court actually order an award of benefits. *See Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

> To evaluate a disability claim, an ALJ must use the following five-step inquiry:
>
> (1) [is] the claimant…currently employed, (2) [does] the claimant ha[ve] a severe impairment, (3) [is] the claimant's impairment…one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment,…can [he] perform h[is] past relevant work, and (5) is the claimant…capable of performing any work in the national economy[?]

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted). After Step Three, but before Step Four, the ALJ must determine a claimant's RFC, which represents the claimant's physical and mental abilities considering all of the claimant's impairments. The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e),(g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

### III.
#### DISCUSSION

Mr. Woytsek raises four main arguments on appeal: (1) that substantial evidence does not support the ALJ's Step Three determination that Mr. Woytsek's combined impairments do not meet or medically equal Listing 12.04 of 20 C.F.R. Part 404, Subpart P, Appendix 1, [dkt. 16 at 9-12]; (2) that the ALJ erred by not summoning a medical advisor to give testimony regarding whether Mr. Woytsek's combined impairments met or medically equaled any listed impairment,

such as Listing 12.04, [*id.* at 13-14]; (3) that the ALJ's credibility determination is patently erroneous, [*id.* at 15-16]; and (4) that substantial evidence does not support the ALJ's Step Five determination, [*id.* at 17-18]. The Court will address each challenge in turn.

### A. Whether Substantial Evidence Supports the ALJ's Listing 12.04 Determination

Mr. Woytsek first argues that substantial evidence does not support the ALJ's determination that his combined impairments did not meet or medically equal Listing 12.04. [Dkt. 16 at 9.] Specifically, Mr. Woytsek argues that the ALJ erroneously concluded that he did not satisfy the criteria of Listing 12.04, Subpart B. [*Id.* at 10.] In support of this argument, Mr. Woytsek asserts that the criteria of Subpart B were established by "the claimant's GAF of 50 which was within the totally disabled range of 50 and below." [*Id.*] Mr. Woytsek continues by alleging that the ALJ "ignored or rejected the evidence which proved the claimant was disabled and thus erroneously based the denial decision only on his own layperson's expertise." [*Id.*] Mr. Woytsek concludes his argument by citing various propositions of law without any sort of application to the facts of this case whatsoever. [*Id.* at 10-12.]

The Code of Federal Regulations provides that the Social Security Administration "will find that [a claimant's] impairment(s) meets the requirements of a listing when it satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement…." 20 C.F.R. § 416.925(c)(3) (alteration in original). To meet subpart B of Listing 12.04, a claimant must show that his impairments caused at least two of the following:

> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration[.]

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.04(B) (alteration in original). A "marked" limitation "means a limitation that is 'more than moderate' but 'less than extreme.'" *Id.*

If an impairment or combinations of impairments "does not meet the criteria of a listing, it can medically equal the criteria of a listing." § 416.925(c)(5). The provision on medical equivalence states in pertinent part:

> (1) (i) If you have an impairment that is described in…appendix 1…, but--
>
> (A) You do not exhibit one or more of the findings specified in the particular listing, or
>
> (B) You exhibit all of the findings, but one or more of the findings is not as severe as specified in the particular listing,
>
> (ii) We will find that your impairment is medically equivalent to that listing if you have other findings related to your impairment that are at least of equal medical significance to the required criteria.

20. C.F.R. § 416.926(b). In determining medical equivalence, an ALJ should consider "all evidence in [the claimant's] case record about [the claimant's] impairment(s) and its effects on [the claimant] that is relevant to this finding." 20 C.F.R. § 404.1526(c). The ALJ also should consider "the opinion given by one or more medical or psychological consultants designated by the Commissioner." *Id*.

Social Security Ruling ("SSR") 96-6p provides that the ALJ "is responsible for deciding the ultimate legal question of whether a listing is met or equaled." 1996 SSR LEXIS 3, *7-8. However, SSR 96-6p further states that "longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight." *Id*.

In *Scheck v. Barnhart*, 357 F.3d 697 (7th Cir. 2004), the Court was faced with a challenge that the ALJ did not satisfy her duty to "minimally articulate his or her justification for rejecting or accepting specific evidence of disability." *Id.* at 700. There, the ALJ relied on the reports submitted by two state agency physicians in determining that the claimant was not disabled. *Id.* The Court rejected the claimant's argument, relying on the closely analogous case of *Steward v. Bowen*, 858 F.2d 1295 (7th Cir.1988). In *Steward,* the Court held:

> In the present case, Steward did not present any substantial evidence to contradict the agency's position on the issue of medical equivalency. The opinions of Steward's treating physicians simply did not address this question. Thus, the ALJ did not reject specific evidence supporting Steward's position that her impairments meet or equal a listed impairment in favor of the contrary opinions of the Secretary's consulting physicians. It was therefore unnecessary for the ALJ to specifically articulate his reasons for accepting the consulting physicians' opinions on the question of medical equivalency.

*Id.* at 1299. As did the Court in *Scheck*, this Court also finds the guidance of *Steward* apposite to the issue before it.

At Step Three of Mr. Woytsek's evaluation, the ALJ found that while Mr. Woytsek met the criteria of Subpart A of Listing 12.04, [dkt. 11-2 at 17], he failed to satisfy the criteria set forth in Subpart B of Listing 12.04, [*id.* at 18-20]. This finding was predicated on an extensive discussion of objective medical evidence from state agency physicians and treating physicians, as well as subjective statements made by Mr. Woytsek, his mother, and his domestic partner, which concluded that:

- Mr. Woytsek has mild restrictions in his activities of daily living, [*id.* at 18];
- He has mild difficulties in social functioning, [*id.* at 18-19];
- He has moderate difficulties with concentration, persistence, and pace, [*id.* at 19-20]; and
- He has not experienced any episodes of decompensation, [*id.* at 20].

Indeed, the Court finds that the ALJ provided a lucid analysis of his determination that Mr. Woytsek did not satisfy the criteria listed in Subpart B of Listing 12.04. The ALJ discussed each factor contained in Subpart B, provided a finding for each, and described the evidence upon which his finding was based upon. [*Id.*]

Mr. Woytsek does not cite to any evidence contained in the record to contradict the ALJ's findings. He vaguely states that "the ALJ erroneously failed to give controlling weight to the opinions of the claimant's treating-examining physicians that he was disabled," but fails to point to any specific evidence supporting that conclusion. [Dkt. 16 at 10.] The only specific evidence Mr. Woytsek mentions is Dr. Rau's finding in connection with Part A that Mr. Woytsek suffered from major depression and ADHD, [*id.* at 9], and Mr. Woytsek's receipt of a GAF score of 50, [*id.* at 10]. Neither supports remand, however.

First, Mr. Woytsek's satisfaction of the criteria set forth in Subpart A of Listing 12.04 was never in contention – the ALJ found that Part A was satisfied. [Dkt. 11-2 at 17.] Second, as to the GAF score of 50, the Seventh Circuit Court of Appeals has made it clear that "nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (quoting *Wilkins v. Barnhart*, 69 Fed.Appx. 775, 780 (7th Cir. 2003)). Moreover, the ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993).

While the ALJ did not expressly mention the GAF score of 50 in his determination, it is clear that the ALJ did not simply refuse to consider Mr. Woytsek's GAF scores, which Mr. Woytsek urges this Court to believe. As a corollary to his discussion of Mr. Woytsek's RFC, the ALJ expressly referenced two of Mr. Woytsek's previous GAF scores: one issued by Dr. Henry

in December 2008, and one issued by Dr. Lynch in February 2010. [Dkt. 11-2 at 23.] The Court finds this to be sufficient evidence that the ALJ did not simply disregard Mr. Woytsek's GAF scores in making his Step Three determination.

The Court finds that the significant weight the ALJ assigned to the opinions of the state agency physicians, as well as his ultimate determination that Mr. Woytsek's impairments did not meet or medically equal any Listing, were supported by substantial evidence contained in the record. The ALJ considered the record as a whole and properly weighed all of the evidence before him. Moreover, Mr. Woytsek's treating physicians did not address the issue of medical equivalence, nor does the record contain any evidence that would lead a reasonable person to question the findings of the state agency physicians.

Accordingly, because the ALJ explained how he reached his determination that Mr. Woytsek's combined impairments did not meet or medically equal Listing 12.04, and his analysis is supported by substantial evidence contained in the record, the Court does not find error.

### B.  The ALJ's Decision Not to Summon a Medical Advisor to Provide Testimony

Mr. Woytsek argues that the ALJ committed reversible error by failing to call upon a "medical advisor" to testify on the issue of medical equivalence, and instead based his decision solely on his own layperson opinion. [Dkt. 16 at 13-14.] In support of his argument, Mr. Woytsek asserts that the ALJ improperly relied on opinions from state agency physicians written in 2010, which predated the evaluation Dr. Rau conducted in June 2011 in which the GAF score of 50 was assigned. [*Id.* at 13.] He simply states that, had the state agency physicians seen Dr. Rau's report, "they would have reasonably determined he was totally disabled." [*Id.*]

An ALJ must obtain a medical opinion from a medical expert:

When no additional medical evidence is received, but in the opinion of the administrative law judge or the Appeals Council the symptoms, signs, and laboratory

- 9 -

> findings reported in the case record suggest that a judgment of equivalence may be reasonable; or
>
> When additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

1996 SSR LEXIS 3, *9-10. "If the ALJ believes that he lacks sufficient evidence to make a decision, he must adequately develop the record and, if necessary, obtain expert opinions." *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000). However, a treating physician's opinion receives controlling weight only when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). Moreover, the Seventh Circuit has declared that "if the treating physician's opinion is inconsistent with the consulting physician's opinion, internally inconsistent, or based solely on the patient's subjective complaints, the ALJ may discount it." *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008). Thus, whether subsequent evidence is sufficiently compelling to warrant opinions from additional medical experts is left to the judgment of the ALJ.

The ALJ's determination here was not based on his uninformed layperson opinion. In addition to the reports provided by Drs. Lynch and Shipley, which this Court recognizes as expert opinion evidence, the ALJ also considered both supporting and contrary evidence throughout his discussion. *See* 20 C.F.R. § 416.927(e)(2)(i) ("State agency medical and psychological consultants…are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation"); *see also* 1996 SSR LEXIS 3, *1-2 (stating that findings of fact made by state agency physicians "must be treated as expert opinion evidence").

At multiple points throughout his discussion, the ALJ acknowledges and discusses the medical evidence established after the opinions of the state agency psychologists were issued. Indeed, the ALJ expressly acknowledges that the state agency physicians were not privy to the entire record at the time their opinions were formed. [Dkt. 11-2 at 23.] Notwithstanding the temporal issue, Mr. Woytsek fails to explain exactly how Dr. Rau's assignment of a GAF score of 50 on one occasion would have swayed the state agency psychologists to find Mr. Woytsek was disabled. Mr. Woytsek has lost sight of the fact that Dr. Lynch, a state agency psychologist, assigned Mr. Woytsek a GAF score of 54, which was a mere four points higher than the GAF score assigned by Dr. Rau approximately one year later. The Court is not persuaded that Dr. Lynch's evaluation would have reached a different conclusion, solely because Mr. Woytsek's treating physician assigned a slightly lower GAF, nor is the Court persuaded that a GAF score of 50, without more, satisfies the criteria set forth in Subpart B of Listing 12.04.

Accordingly, the Court finds that the ALJ properly considered the evidence that developed subsequent to the date on which the state agency psychologists issued their opinions, and that substantial evidence supported the ALJ's decision not to seek an updated opinion from a medical expert.

### C.  The ALJ's Credibility Determination

The ALJ's credibility determination is typically entitled to special deference. *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004); *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying"). Although the absence of objective evidence cannot, standing alone, discredit the presence of substantive complaints, *Parker v. Astrue*, 597 F.3d 920, 922-23 (7th Cir. 2010), when faced with evidence both supporting and detracting

from claimant's allegations, the Seventh Circuit has recognized that "the resolution of competing arguments based on the record is for the ALJ, not the court." *Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002). "[D]etermining the credibility of the individual's statements, the adjudicator must consider the entire case record," and a credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006).

Mr. Woytsek argues that the ALJ's credibility determination was patently erroneous as contrary to Social Security Ruling 96-7p. [Dkt. 16 at 15-16.] In support of this argument, Mr. Woytsek asserts that "[t]he ALJ's failure to consider the GAF of 50, which fully corroborated the claimant's allegations of total disability, was contrary to his duty to consider Factor 2 of the Ruling: …The location, duration, frequency, and intensity of the individual's pain or other symptoms…." [*Id.* at 15.] Mr. Woytsek further asserts that "[a]pplied to the instant case the ALJ thus arbitrarily rejected the claimant's statements describing her [sic] total disability." [*Id.*] Mr. Woytsek concludes his argument by alleging that "[t]he ALJ did not articulate any legitimate reason for her [sic] credibility decision. The ALJ did not explain why all of the objective medical evidence did not support the claimant's complaints of disabling pain." [*Id.*][5]

Mr. Woytsek makes no attempt to develop a cogent legal argument to support his position. Moreover, Mr. Woytsek has not included a single citation to the record that supports any of his arguments. Instead, Mr. Woytsek has simply regurgitated various propositions of law, with a series of conclusory statements thrown in for good measure. As it has done before, the Court finds that this undeveloped argument is waived. *See Anderson v. Gutschenritter,* 836 F.2d 346, 349 (7th Cir. 1988) (noting that "an issue expressly presented for resolution is waived if not de-

---

[5] Mr. Woytsek erroneously refers to both himself and the ALJ as "her" in this section of his brief, which the Court suspects was cut and pasted from a brief used in another case.

veloped by argument") (citation omitted); *Johnson v. Astrue*, 2010 U.S. Dist. LEXIS 27503, *18 (S.D. Ind. 2010) (claimant waived argument where she merely provided a "string of block quotes from medical records…devoid of any legal analysis").

### D. Whether Substantial Evidence Supports the ALJ's Step Five Determination

Mr. Woytsek argues that the ALJ erred at Step Five because he "failed to account for the claimant's deficiencies in social functioning and concentration, persistence or pace," and his hypothetical questions to the VE at the hearing "attempted to account for the claimant's difficulties with those functions by limiting him to 'simple work tasks' with only minimal contact with the general public." [Dkt. 16 at 17.]

It is well-established that when an ALJ poses a hypothetical question to a vocational expert, the question must include all limitations supported by medical evidence in the record. *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009). The Seventh Circuit has repeatedly held that limiting a claimant who has limitations of concentration, persistence, and pace to "simple, routine tasks" "d[oes] not adequately account for the plaintiff's medical limitations, including an 'impairment in concentration.'" *Id.* at 684-85; *see also O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618-19 (7th Cir. 2010) (limiting claimant to "routine, repetitive tasks with simple instructions" did not account for "moderate limitation on concentration, persistence and pace"); 1985 SSR LEXIS 20, *16 (1985) ("Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job").

The flaw in Mr. Woytsek's argument, however, is that the ALJ's restriction to "simple work tasks" was not the only way in which the ALJ accounted for Mr. Woytsek's moderate dif-

ficulties with concentration, persistence, and pace when he questioned the ALJ.  Instead, rather than simply limiting the vocational expert to jobs that involved simple and repetitive tasks – as the ALJs in the cases cited by Mr. Woytsek did[6] – the ALJ here specifically noted that the hypothetical person had "moderate limitations in concentration, persistence and pace," had to perform tasks "at GED reasoning level one," and "can perform productive work tasks for up to an average of 90 to 95 percent of an eight-hour work day."  [Dkt. 11-2 at 74-76.]  The Court finds that these limitations adequately accounted for Mr. Woytsek's moderate deficiencies in concentration, persistence, and pace, and that including the restriction of "simple work tasks" – along with these other restrictions – is not a ground for remand.

---

[6] The cases cited by Mr. Woytsek to support his Step Five argument either did not involve a situation where the ALJ specifically noted that the claimant had difficulties with concentration, persistence, and pace and included multiple limitations – as the ALJ here did – or are inapposite for other reasons.  *See Yost v. Astrue*, 2012 U.S. Dist. LEXIS 94921, *57-58 (N.D. Ill. 2012) (ALJ only limited potential job skills to "simple, repetitive tasks," and did not use the specific terminology "concentration, persistence and pace" as the ALJ did here); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) (did not deal with difficulties in concentration, persistence, and pace and limitation to simple, repetitive tasks, but rather related to ALJ's failure to adequately account for claimant's limitations in sitting and standing when questioning vocational expert); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618-19 (7th Cir. 2010) (unlike here, the ALJ did not specifically mention moderation limitation on concentration, persistence, and pace, but only included limitation to "routine, repetitive tasks with simple instructions"); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) (inapposite to the issue because the court found that limiting questions of vocational expert to jobs which required low level of concentration did not account for claimant's headaches or blurred vision because "concentration is not the same thing as vision"); *Young v. Barnhart*, 362 F.3d 995, 1003-04 (7th Cir. 2004) (ALJ used RFC as basis for questioning vocational expert, which included only limitation to simple, routine, repetitive, low stress work with limited contact with coworkers and limited contact with the public and did not specifically mention difficulties with concentration, persistence, and pace or otherwise accommodate for those difficulties); *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002) (did not specifically deal with the issue of whether limiting jobs to simple and repetitive tasks fully accounted for limitations in concentration, persistence, and pace).

- 15 -

## IV.
### CONCLUSION

The standard for disability claims under the Social Security Act is stringent.  "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful."  *Williams-Overstreet v. Astrue*, 364 Fed. Appx. 271, 274 (7th Cir. 2010).  Furthermore, the standard of review of the Commissioner's denial of benefits is narrow.  *Id.*  Taken together, the Court can find no legal basis presented by Mr. Woytsek to overturn the Commissioner's decision that Mr. Woytsek does not qualify for disability, disability insurance benefits, or supplemental security income.  Therefore, the decision below is **AFFIRMED**.  Final judgment will be entered accordingly.

08/19/2013

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Patrick Harold Mulvany
patrick@mulvanylaw.com